### In re VISCHSCHOONMAKER, OSSEN-DRYVER GALLERIES INTERNATIONAL, INC., Debtor.

**Bankruptcy No. 82–00473.**

United States Bankruptcy Court, D. Hawaii.

Nov. 28, 1983.

V. Spencer Page, Honolulu, Hawaii, for applicant.

Michael A. Yoshida, Honolulu, Hawaii, for former trustee.

Richard Lachman, Honolulu, Hawaii, for debtor.

V. Thomas Rice, Honolulu, Hawaii, for co-applicants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE APPLICATION FOR APPOINTMENT OF TRUSTEE

JON J. CHINEN, Bankruptcy Judge.

On March 16, 1983, Ibrahim Nemetnejad (Applicant) filed an Application for Appointment of Trustee. On April 18, 1983, Abraham Vischschoonmaker aka Abbie Vischschoonmaker, (Mr. V), Shalom Brothers, Inc., a New York Corporation, and Walter A. Yim and Associates, Inc., a Hawaii corporation, (hereafter jointly Co-Applicants) filed their Joinder of Co-Applicants

For Appointment of Trustee, and Ralph S. Aoki, the former Trustee herein, filed his Joinder In Application For the Appointment of a Trustee.

Hearings on the application were held over several days. Present at the various hearings were V. Spencer Page, Esq., attorney for Applicant, Michael A. Yoshida, Esq., attorney for Ralph S. Aoki, former Trustee, Charles S. Lima, Esq., former attorney for Vischschoonmaker, Ossendryver Galleries International, Inc., (VOGI) and also attorney for Drakespur Antiquities, Ltd. (Drakespur), Joint Venture of July 11, 1982, and Morice Lidchi; Ray A. Findlay, Esq., attorney for Morice Lidchi (Lidchi); V. Thomas Rice, Esq., attorney for Co-Applicants; Paul A. Tomar, Esq., attorney for Beverly S. Nelson, (Ms. Nelson); and Richard H. Lachman, Esq., successor attorney for VOGI.

Based upon the evidence adduced, the memoranda and records in the file, and arguments of counsel, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

In February 1979, Mr. Morice Ossendryver (Mr. O) and Mr. V formed VOGI, the Debtor corporation, with Mr. O and Mr. V each owning one-half (½) of the $30,000 shares of common stock issued. Ms. Nelson was the secretary-treasurer.

In 1980, the common shares of VOGI were converted to preferred shares with Mr. O and Mr. V holding equal shares, and ten shares of common stock, par value of $1.00 per share, were issued to Ms. Nelson. As part of this conversion, promissory notes held by Mr. O payable by VOGI were reaffirmed. These promissory notes included one note dated January 7, 1980, in the amount of $74,344.00, and another note of the same date, amended November 4, 1980, in the amount of $112,007.19.

Attorney Charles S. Lima and Ms. Nelson have filed affidavits in this case averring that on April 16, 1981, Mr. V executed a trust instrument in which the trust corpus consisted of Mr. V's 15,000 preferred shares of stock in VOGI, and two promissory notes payable by VOGI to Mr. V, both dated January 7, 1980, with one being in the amount of $74,334.00, and the other $133,021.12. Mr. Lima, who represented VOGI in the instant case from its outset until August 29, 1983, was named as the trustee of this trust. There was apparently another trust instrument executed contemporaneously by Ms. Nelson, with Mr. Lima as the trustee, the result of which was that the two trusts held all preferred and common shares of VOGI, as well as debt instruments payable by VOGI.

On September 21, 1981, to settle an ongoing controversy between Mr. O and Mr. V, an agreement was signed between VOGI and Mr. O. By this agreement, Mr. O surrendered to VOGI his 15,000 preferred shares of stock and the previously described promissory notes, in exchange for the issuance of a new promissory note in the amount of $70,000.00 and a quantity of Oriental carpets equal in value to the sum of $112,000.00. VOGI-owned carpets constituted the carpets conveyed to Mr. O as part of this agreement.

Although pursuant to the September 21, 1981 agreement Mr. O was to receive sixteen carpets previously traded in for VOGI carpets sold by Mr. O during March and April, 1980, the sixteen carpets had become VOGI property when they were traded in.

Also settled as part of the September 21, 1981 agreement was the claim of VOGI for any reimbursement for the storage, shipping, and insuring of a carpet known as the Hereke "S", which apparently was not claimed as an asset of VOGI. In addition, VOGI also assumed certain debts to trade creditors incurred purportedly on behalf of VOGI by Mr. O, and indemnified Mr. O for any claims made by trade creditors.

A loose "holding" arrangement, whereby carpets ordered from the Applicant were sent to VOGI from Bermuda was also in existence during this period. In this "holding" arrangement, the disposition of the carpets and proceeds from the sales, if any, were never clearly defined through docu-

mentation between and among VOGI, Mr. V and Mr. O.

In approximately January, 1982, Mr. O filed an action in the United States District Court for the District of Hawaii seeking to enforce the 1981 agreement. VOGI counter-sued in a separate action in the same court, seeking to enjoin Mr. O from using company customer listings and otherwise representing that he continued to act for the company in the sale of Persian carpets in his possession.

In the first week of April, 1982, Ms. Nelson, acting in her corporate capacity, transferred all of the carpet inventory of VOGI to an Isle of Jersey offshore corporation called Drakespur Antiquities, Ltd. which she had caused to be formed. This was a "paper" transaction, intended to allow the continued sale of the Persian carpets from VOGI without interference from Mr. O in the pursuit of his federal lawsuit against VOGI. Carpets transferred to Drakespur at this time were exclusively VOGI carpets.

At the time of the transfer of carpets to Drakespur, Drakespur was controlled by a board of directors in New Jersey, and Ms. Nelson was the spokesperson for the corporation. Cornelius Van Beek was listed as the chairman of Drakespur, as that title was used in describing the officers of an Isle of Jersey corporation; Mr. Van Beek was also a vice-president and a Director of VOGI. Drakespur was not registered as a foreign corporation doing business in the State of Hawaii with the then Department of Regulatory Agencies of the State of Hawaii.

At the time of the Drakespur transfer, Mr. V had a claim against part of the inventory pursuant to a divorce action between Ms. Nelson and himself in the family court of the State of Hawaii. Mr. Lidchi also had made a claim to two of the carpets which were in Ms. Nelson's care at the time of the transfer.

During the period in which Drakespur marketed the VOGI inventory, proceeds accruing to Drakespur from the sale of Persian carpets were variously used to pay exhibition debts in Phoenix incurred by Mr. V, costs on exhibitions or auctions as part of Drakespur exhibitions, and also directly to VOGI indebtedness. A contemplated cost-of-carpet plus 20% net profit from these proceeds was never realized by VOGI because of VOGI's large accrued indebtedness.

During the time Drakespur marketed the carpets transferred from VOGI, there were at least three separate accounts bearing Drakespur identity. These included the following:

    a. An account with the Bank of Hawaii, for which Ms. Nelson was the sole signatory.

    b. An account in Phoenix.

    c. An account in Denver.

There was also a proposed account in Bermuda. Although subpoenae duces tecum had been issued from this Court addressed to VOGI and Ms. Nelson, individually, none of these account records were produced in Court.

From the time of the transfer of the VOGI carpets to Drakespur until the execution of a July 11, 1982 settlement agreement, 35 of a total of approximately 102 carpets were sold. Accounting for those sale proceeds used to pay-off VOGI accounts during this period was apparently through Drakespur accounts. No direct accounting was made via the VOGI account for the VOGI debts paid. Of the sales transactions effected under the auspices of Drakespur, one involved a transfer of $9000.00 in sale proceeds to VOGI, either directly or through indirect payments to creditors.

In settlement of the federal litigation, Mr. O, Ms. Nelson, and VOGI executed a Settlement, Release and Joint Venture Agreement ("Settlement Agreement") on July 11, 1982.

The remaining inventory previously transferred to Drakespur by VOGI became the carpets which were contributed variously by Mr. O and Ms. Nelson described in the Settlement Agreement. These "consignments", in the case of the carpets described as being contributed by Ms. Nelson, were

the same carpets which had been transferred to Drakespur. The carpets described in Exhibit "A" of the Settlement Agreement on page 7 were carpets held by VOGI but variously claimed by either Mr. V or Mr. O, but with no apparent title documents.

The purpose of the Settlement Agreement was to recover VOGI carpets which had been given to Mr. O as part of the prior September 11, 1981 agreement with Mr. O, and to place the carpets into a pool to be sold to pay off VOGI's debts.

The joint venture described in the Settlement Agreement as "Persian Carpets of Hawaii" was not registered with the Department of Commerce and Consumer Affairs ("DCCA") of the State of Hawaii. The joint venture apparently did business as "Anglo-American Joint Venture", and has sued Mr. O under the name "Anglo-American Art Consultancy, Ltd." This joint venture, since its formation as part of the Settlement Agreement, has been represented by attorney Charles S. Lima, who has entered a formal appearance in this case on its behalf.

Under the terms of the Settlement Agreement, Ms. Nelson was to receive $35,-000.00 from an initial "cost deduction" of $70,000.00 to be paid to Mr. O. In addition 40% of proceeds from the sale of carpets contributed to the Settlement Agreement, after deductions for costs, was to be paid to Ms. Nelson attributable to the harassment inflicted on her, and for loss of business caused by Mr. O.

No records were produced of sales activity of the Settlement Agreement carpets between the execution of the agreement on July 11, 1982, and the filing of the Chapter 7 petition in this case, despite repeated issuance of subpoena compelling the production of the records in court.

Proceeds of post-petition sales of the Settlement Agreement carpets in the form of cash or post-dated checks, to the extent such proceeds exceeded the costs of sale deducted by Mr. O, were paid into attorney Charles S. Lima's office. Apparently thereafter, disbursements were requested by Ms. Nelson, and attorney Charles S. Lima acted as the disbursing agent.

Prior to the filing of the Chapter 7 petition in this case, Ms. Nelson had withdrawn from the assets of VOGI $15,000.00 in receivables, $5,000.00 in furniture, and $5,000.00 in carpets. These withdrawals were in payment of debts owed by VOGI to Ms. Nelson, and were made around April of 1982.

On August 25, 1982, VOGI filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code, and Ralph Aoki was eventually appointed trustee. Pursuant to his order of appointment, Mr. Aoki in seeking to locate, identify, and clarify the ownership of various assets of VOGI, began a series of actions, including Bankruptcy Rule 205 examinations of Mr. Cornelius Van Beek and Ms. Nelson.

Trustee Aoki received no cooperation in his efforts to marshall the records and assets of VOGI. He received only a small number of the corporate records of VOGI, although he had requested all corporate records. Although Mr. Aoki received keys to E–Z Access Storage so that he may have access to carpets the ownership of which was in dispute, he discovered that other persons had access to the carpets. Though Mr. Lima had represented that he would turn over post-dated checks to Mr. Aoki, the checks were not turned over. Trustee Aoki was further hampered in his efforts to marshall the assets of VOGI by the late-filing of VOGI's Statement of Affairs and Schedules. The Schedules, filed December 21, 1982, revealed assets of approximately $40,-095.11 and liabilities totalling $359,627.24.

On February 28, 1982, VOGI moved, ex parte, for conversion of the Chapter 7 proceedings to Chapter 11, the order of conversion being filed March 7, 1983. The stated purpose of the conversion was to effect the Settlement Agreement of July 11, 1982, and thereby pay off creditors of the estate.

Following conversion, Mr. Aoki filed a final account of the Chapter 7 proceedings, reporting at the time of conversion possession of an inventory of carpets valued at $117,251.31.

The records obtained by the Trustee from Ms. Nelson prior to conversion included a listing of carpets sold by the July 11, 1982 joint venture. This report showed gross sales in the amount of $157,700.00, with a joint cost of sales of $40,406.09.

As of May, 1983, the joint venture had entered into sales transactions of a total gross of $196,200.00, with a total cost of $63,229.18, although apparently approximately four of the sales actions were not concluded.

On August 1, 1983, Mr. Lidchi, the July 11, 1982 joint venture ("Anglo American Art Consultancy, Ltd."), and Ms. Nelson filed a complaint in the Circuit Court of the Second Circuit, State of Hawaii, Civil No. 7158, entitled, "Morice Lidchi, Joint Venture of January, 1982, Beverly G. Nelson, and Anglo-American Art Consultancy, Ltd. v. Morice Ossendryver." Although a signatory to and beneficiary of the Settlement Agreement, VOGI is not named in the suit. Part of this complaint alleges the failure of the Defendant, Mr. O, to account for proceeds and carpets which were part of the July 11, 1982, joint venture, and for breach of the agreement.

Pursuant to the Maui action, Ms. Nelson recovered from Mr. O part of the inventory originally delivered to Mr. O under the July 11, 1982 settlement agreement. Mr. O continues to hold approximately eleven Persian carpets, which were originally VOGI inventory, which he refuses to release or return to Ms. Nelson.

As of the August 29, 1983 concluding hearing on the instant application, VOGI had not filed any accounting with this Court regarding proceeds from the joint venture or disposition of its inventory even though this Court had directed the filing of accountings as early as April 18, 1983. Representations had been made to this Court at a May 11, 1983 hearing that an accountant had been retained, although not appointed by this Court, and that accountings would be filed with this Court.

### CONCLUSIONS OF LAW

1. The July 11, 1982 Settlement Agreement was a preferential transfer among insiders, effected within 90 days of the filing of the Chapter 7 petition herein, at a time when the insiders participating had cause to believe that VOGI was insolvent.

2. From and after the filing of the Chapter 7 petition, principals of VOGI, including its attorney, failed to cooperate in the orderly marshalling of assets by the court-appointed trustee.

3. VOGI has failed to provide any Chapter 11 accountings to the Court, even though substantial sales have occurred during this period and proceeds have apparently been paid to attorney Lima.

4. The confused intermingling of substantial assets of VOGI and Drakespur, (the July 11, 1982 Settlement Agreement), Mr. O, Mr. V, and Ms. Nelson, with minimum property transfer documentation, requires that a disinterested third party review the operations of the corporation to establish the assets of VOGI, as well as determine the validity of claims of both insiders and arms-length creditors.

5. Under 11 U.S.C. § 1104, appointment of a trustee in this case must be justified under either of two standards:

a. For cause, including fraud, dishonesty, incompetence, or gross mismanagement of VOGI, either before or after the commencement of the case ..., or

b. If the appointment is in the interest of creditors.

6. This Court finds that the actions of debtor herein described constitute cause for the appointment of a Trustee and that this appointment is in the interest of creditors. Therefore, appointment of a Trustee is necessary, and the Court hereby appoints Ralph S. Aoki as Trustee.

7. Upon presentation of an Order, this Court will issue appropriate injunctive relief requiring all principals and previous insiders of VOGI to refrain from any further disposition of carpets through either VOGI, or indirectly through the July 11, 1982 Settlement Agreement.

8. Ms. Nelson, attorney Charles Lima, and any other person or entity which has at any time held what had prior to such holding been VOGI assets, inventory, or property, shall be required to account fully for the disposition of the described assets, and/or any monies or other consideration received therefor.

An Order will be signed upon presentment.